# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**GERALD A. KESTLER,**

               **Plaintiff,**

**-vs-**                                   **Case No.  2:10-cv-00220-DNF**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

               **Defendant.**

_____

## OPINION AND ORDER

The Plaintiff, Gerald A. Kestler, seeks judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("SSA") denying his claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C §405(g).

## I. Social Security Act Eligibility, Procedural History, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §

§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Procedural History

On August 19, 2005, the Plaintiff filed applications for a period of disability, DIB, and SSI for the period beginning June 1, 2005.  (Tr. 13, 70, 428).  His claims were denied initially on December 21, 2005, and upon reconsideration on June 2, 2006. (Tr. 48-50, 54-57, 418-20).   On May 8, 2008, and August 5, 2008, hearings were held before Administrative Law Judge ("ALJ") Tony Eberwein. (Tr. 461, 475).  The ALJ denied the Plaintiff's claims in a decision dated November 17, 2008. (Tr. 13-20).  On February 19, 2010, the Appeals Council denied the Plaintiff's Request for Review. (Tr. 2).  On April 12, 2010, the Plaintiff filed a complaint against the Commissioner of the SSA, thus commencing this suit. (Doc. 1).

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439(11th Cir. 1997); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). In conducting this review, this Court may not reweigh the evidence or substitute our judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the district court will reverse the Commissioner's decision on plenary review if the

decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The first step is considering work activity. If the claimant is doing any substantial gainful activity he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work. If the claimant can still do his past relevant work, he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv). The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if he can make an adjustment to other work. If the claimant can make an adjustment to other work, the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287; *see also Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

## II. Review of Facts

### A. Background Facts

The Plaintiff was born on January 24, 1961 and was 44 years old on the alleged disability onset date. (Tr. 18).  He has a tenth grade education and is able to communicate in English. (Tr. 18, 463).  He formerly worked as a construction worker and appliance installer. (Tr. 93, 118).  The Plaintiff alleges disability due to back injury, hypertension, and hepatitis C. (Tr. 92).  Due to these conditions, the Plaintiff alleges he has been unable to work since August 2005. (Tr. 70).

### B. The ALJ's Findings

At step one, the ALJ found that the claimant meets the insured status requirements of the Social Security Act through December 31, 2012, and has not engaged in substantial gainful activity since June 1, 2005. (Tr. 15).

At step two, the ALJ found that the Plaintiff has the following severe impairments: 1) hypertension, 2) hepatitis C, 3) back pain, and 4) history of cerebrovascular accidents. (Tr. 15).

However, at the third step, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 16).

At the fourth step, the ALJ found that the Plaintiff

has the residual functional capacity to perform a limited range of sedentary to light work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  The claimant can lift 20 pounds with his dominant right hand and five pounds with his non-dominant left hand.  He requires a sit/stand option exercisable at will.  The [Plaintiff] can occasionally stoop and climb stairs, and cannot climb ropes/ladders/scaffolds, squat, kneel, or crawl.  He cannot reach with his non-dominant left hand and cannot perform fine manipulations with the non-dominant left hand.  Finally, the claimant should not be exposed to work at unprotected heights or around hazardous machinery.

(Tr. 16-17).  In making this finding, the ALJ states he "considered all symptoms and the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of [the applicable CFR and SSR sections]" and "also considered opinion evidence in accordance with the requirements of [the applicable CFR and SSR sections]." (Tr. 17). Next, the ALJ found that the Plaintiff's residual functional capacity precluded him from performing any past relevant work. (Tr. 18).

At the fifth step, the ALJ found that considering the Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Tr. 18). Based upon the testimony of the vocational expert, the ALJ determined that the Plaintiff could work as a surveillance system monitor, gate guard, or case aid, despite the added limitations to his residual functional capacity. (Tr. 19). Based on these findings, the ALJ concluded that the Plaintiff was not disabled. (Tr. 19).

### C. Medical Evidence

In November 2004 and in the summer 2005, the Plaintiff made approximately a dozen visits to Widom Chiropractic Offices, complaining of soreness and stiffness of the lower back. (Tr. 387-406). On these visits, Dr. Gavin Widom, D.C. (Doctor of Chiropractic), consistently found that the Plaintiff suffered from subluxation of the lumbar spine, sacral region, left sacroilliac joint and right sacroilliac joint. (Tr. 387-399). Dr. Widom also consistently noted that the Plaintiff suffered from spasm and tenderness of the Paralumbar muscles bilaterally and spasm and tenderness of the Gluteal/Piriformis muscles bilaterally. (Tr. 387-399). Dr. Widom treated the Plaintiff's conditions through spinal manipulation (1-2) region, soft tissue adjustments, vibrator massage and myofascial release techniques. (Tr. 387-399). Dr. Widom noted that the Plaintiff's condition improved with treatment and released him to return to work with no restrictions, most recently in August 2005. (Tr. 387).

On November 7, 2005, the Plaintiff was admitted to Naples Community Hospital with complaints of left side weakness and unstable gait. (Tr. 290). The records indicate that he was diagnosed with cerebrovascular accident and labile hypertension. (Tr. 294). A computed tomography scan indicated that the Plaintiff had a history of prior strokes. (Tr. 294). The hospital also performed an MRI on the Plaintiff, which revealed certain irregularities and infarcts in the Plaintiff's brain. (Tr. 322-24).

On November 19, 2005, the Plaintiff was examined by A. Neil Johnson, M.D., of Disability Consultants, P.C. (Tr. 282-87). The Plaintiff's chief complaint were high blood pressure, stroke, back injury, and hepatitis C. (Tr. 282). Although the Plaintiff walked normally, he had a slightly small-stepped gait. (Tr. 283). Dr. Johnson's physical examination did not reveal any serious physical problems at that time. (Tr. 283). The Plaintiff told Dr. Johnson that he suffered a stroke on November 10, 2005. (Tr. 284). The Plaintiff also stated that he had very bad pain in his back in the past, but that he felt no back pain at the time of the visit. (Tr. 282).

On December 6, 2005, state agency medical consultant Edward Holifield, M.D., performed a RFC assessment of the Plaintiff. (Tr. 274-281). Dr. Holifield found that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and could do unlimited pushing and/or pulling. (Tr. 275). Dr. Holifield also found that the Plaintiff did not have any postural, manipulative, visual, communicative, or environmental limitations. (Tr. 276-278).

On May 31, 2006, another state agency medical consultant, James Andriole, D.O., performed a RFC assessment of the Plaintiff. (Tr. 266-273). Dr. Andriole found that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and could do unlimited pushing and/or pulling. (Tr. 267). Dr. Andriole also opined that the Plaintiff could only occasionally climb, balance, stoop, kneel, crouch and crawl. (Tr. 268).

On February 2, March 2, April 27, June 15, July 20, October 5, November 9, and December 11, 2006, the Plaintiff visited the Neighborhood Health Clinic, Inc., for treatment for hypertension and hepatitis C. (Tr. 240-265). The records indicate that the Plaintiff took 50mg of Atenolol and 25mg of hydrochlorothiazide for his hypertension daily, although his blood pressure still remained high or elevated. (Tr. 244-45, 251).

On May 19, 2006, the Plaintiff underwent another consultative examination by Dr. Johnson. (Tr. 407). Dr. Johnson noted that the Plaintiff walked normally with a slightly small-stepped gait and did not use an assistive device. (Tr. 408). He could button his shirt and pick up a coin. (Tr. 408). However, he had mild difficulties of getting on and off the examination table, walking on heels and toes, squatting, and hopping on the right. (Tr. 408). The Plaintiff could not hop on the left. (Tr. 408). Dr. Johnson indicated good motion of the Plaintiff's back, although he noted intermittent back and knee discomfort and slight loss of flexion of the knee with moderate crepitus. (Tr. 409). Dr. Johnson also noted that the Plaintiff consumed up to six beers in a day. (Tr. 407).

On June 20, 2008, the Plaintiff underwent a third consultative examination by Dr. Johnson. (Tr. 230-238). Dr. Johnson observed that the Plaintiff had antalgic small stepped gait with a moderate to severe left sided limp. (Tr. 230). He also observed that Claimant could not pick up a coin or button with his left hand. (Tr. 230). He had moderate difficulty getting on and off the examination table. (Tr. 230). The Plaintiff's motor strength was 4/5 in the lower left extremity and 3/5 in the upper left extremity. (Tr. 231). Dr. Johnson opined that it was medically necessary for the Plaintiff to use a cane and that the Plaintiff could not carry objects without it. (Tr. 234). The Plaintiff could not do rapid wrist, finger to nose, or heel to shin testing with his left side. (Tr. 231). He further stated that the Plaintiff should use a cane for sustained ambulation. (Tr. 231). Dr. Johnson also remarked that the Plaintiff had a restricted range of

motion of the lumbar spine. (Tr. 231).  The Plaintiff's spine flexion was limited to 30 degrees, spine extension to 10 degrees, right lateral extension to 25 degrees, left lateral flexion to 15 degrees, and his right and left rotation was limited to 20 degrees. (Tr. 230).

In his RFC assessment of the Plaintiff, Dr. Johnson stated that the Plaintiff could lift up to 10 pounds frequently and 11 to 20 pounds occasionally with his right hand, but not with his left hand. (Tr. 233).  Dr. Johnson also observed that the Plaintiff could sit for 10 minutes, stand for 5 minutes, and walk for 5 minutes at one time without interruption. (Tr. 234).  In an 8-hour workday, the Plaintiff could sit for 6 hours, stand for 1 hour, and walk for 1 hour. (Tr. 234).  Dr. Johnson also opined that the Plaintiff would be required to use a cane for sustained ambulation and that he could not walk for more than 50 feet. (Tr. 234).

Dr. Johnson further stated that with his right hand the Plaintiff could reach, handle, finger, feel, and push/pull frequently. (Tr. 235).  With his left hand, the Plaintiff could never reach, and only occasionally handle, finger, feel, and push/pull. (Tr. 235).  Dr. Johnson also observed that the Plaintiff could occasionally climb stairs and ramps, but warned that the Plaintiff should avoid such activity. (Tr. 236).  He further stated that the Plaintiff could never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (Tr. 236).

Dr. Johnson did not think that any of the Plaintiff's impairment affected his vision. (Tr. 236).  He found that the Plaintiff could never tolerate unprotected heights or move mechanical parts. (Tr. 237).  Claimant could occasionally operate a motor vehicle or tolerate vibrations. (Tr. 237).  The Plaintiff could frequently tolerate such atmospheric conditions as humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; and extreme heat. (Tr. 237).  Finally, Dr. Johnson opined that the Plaintiff could not perform such individual activities as shopping; could not walk without using a

wheelchair, walker, or two canes or two crutches; could not walk a block on rough or uneven surface; and it would be difficult for the Plaintiff to use public transportation. (Tr. 238).

On June 25, 2008, the Plaintiff visited NCH Healthcare System (Tr. 214-16). His prescribed medication was 50 mg of atenolol, on portion daily, and hydrochlorothiazide, 25 mg, one portion daily, for his chronic hypertension. (Tr. 214-228). On July 24, 2008, the Plaintiff visited Marion Feather Health Department for a check-up. (Tr. 211-12). His prescribed medication remained the same. (Tr. 211).

### D. Testimony

Two hearings were held before the ALJ, the first on May 8, 2008, and the second on August 5, 2008. (Tr. 461, 475). During the first hearing, the Plaintiff testified as follows. He stated that he could read, write, and count change. (Tr. 463-64). He stated that he was working part-time for News America putting advertisements in shopping carts and that he had worked a number of other jobs through temporary work agencies. (Tr. 464-65). The Plaintiff estimated that he worked 5 days in a month's time, totaling approximately 30 hours per month. (Tr. 465). The Plaintiff stated that he was making $8.75 per hour, and that he had not worked full-time since he had a stroke in 2005. (Tr. 465). The Plaintiff testified that he drives everyday, but not far. (Tr. 466). He explained that he is supported by his mother and lives with her at her villa. (Tr. 466). The Plaintiff remarked that he runs errands for her and takes the trash out while she cooks and cleans for him. (Tr. 466-67).

The Plaintiff testified that he is right-handed and that he has some speech problems and left-sided weakness. (Tr. 467). When asked what he could do with his left hand, the Plaintiff responded, "Not really much. I can't grab anything." (Tr. 467). The Plaintiff stated that he could not pick up a coin with his left hand. (Tr. 467). The Plaintiff testified that his left leg was "real numb," but that he did not use a cane, preferring to "deal with the pain." (Tr. 467). The Plaintiff stated that according to his doctor he has had

hepatitis C for approximately 15 years. (Tr. 468).  The Plaintiff remarked that he had a right ankle surgery and that he has high blood pressure. (Tr. 468).  The Plaintiff acknowledged his history of alcohol abuse, but stated that he had not drank any alcoholic beverage for two years. (Tr. 468).  The Plaintiff testified that he can lift 25 or 30 pounds with his right hand, but only less than a pound in his left hand. (Tr. 469).  The Plaintiff stated that he could stand for approximately 15 minutes and can walk 50 feet before having to take a break due to his back problems. (Tr. 469).

The Plaintiff testified that he had visited a chiropractor to have his back checked. (Tr. 469). The Plaintiff stated that the chiropractor x-rayed his back, but that the chiropractor did not share his diagnosis with him. (Tr. 470).  At the end of the hearing, the Plaintiff's attorney explained that the chiropractor made a diagnosis of "subluxation of the lumbar spine, the sacral region, left sacral iliac joint and right sacryl [sic] iliac joint with muscle spasm and osteoarthritis." (Tr. 473).  The Plaintiff stated that the chiropractor performed adjustments which he sometimes found helpful. (Tr. 470).  The Plaintiff testified that he had visited the hospital within the last two years for treatment for his high blood pressure. (Tr. 471).  The Plaintiff's attorney explained that the Plaintiff visited Naples Community Hospital from 2006 to 2008. (Tr. 471).  The Plaintiff's attorney stated that the Plaintiff was found to have had multiple strokes during a visit to Naples Community Hospital in January 2008. (Tr. 471).  The Plaintiff's attorney also stated that Plaintiff had slurred speech at the time and had blood pressure readings of 156/100 despite being on atenolol and hydrochlorothiazide (Tr. 471).  The Plaintiff's attorney also stated that in September 2007, Plaintiff was treated for lesions on his arms, the cause for which was not established, but it may have been due to hepatitis C. (Tr. 471-72).

At the end of the hearing, the Plaintiff testified that he worked as a framework carpenter, but not as a finish carpenter. (Tr. 472).  The ALJ then ended the hearing, ordering a consultative examination of

the Plaintiff. (Tr. 473-74).

On August 5, 2008, the ALJ held a second hearing following the Plaintiff's consultative examination. (Tr. 475).   The Plaintiff testified that he worked at a grocery store where he put ads in shopping carts. (Tr. 477).  The Plaintiff testified that he made $8.75 an hour and his attorney explained that his gross income approximately $4,500 to $4,646. (Tr. 478).

Next, the ALJ posed a hypothetical question to the vocational expert ("VE"), Dr. Tennyson Wright. (Tr. 479).   In the hypothetical, the ALJ stated that the Plaintiff was a younger individual with limited education, had left-sided weakness, had three strokes, had a history of a surgery on his right ankle, and had two knee surgeries. (Tr. 479).   The ALJ also stated that the Plaintiff had high blood pressure, a history of hepatitis, a history of heaving smoking, and a history of alcohol abuse. (Tr. 479).   The ALJ then stated the following:

> If you assume–he's right-handed.  If you assume with his right hand he can lift 20 pounds, with his left hand he can only lift 5 pounds, he needs a sit/stand option at will to be able to work, so he can sit or stand, whatever he needs to do.  He can occasionally stoop, he cannot squat, he cannot kneel, he cannot crawl, he can occasionally climb stairs and he says that he has to have a rail, but they all are supposed to have railings, but no ropes, ladders or scaffolds.  He can't reach with his left, and he's not able to do fine manipulation with his left.  He should not be exposed to unprotected heights or hazardous machinery . . . Someone with that profile, could they do any of the [Plaintiff's] past relevant work?

(Tr. 479-80).  The VE testified that someone with that profile could not perform past relevant work. (Tr. 480).   However, the VE stated the Plaintiff could perform the job of surveillance system monitor, Dictionary of Occupational Titles ( "DOT") no. 379.667-030, which is a sedentary level job with a specific vocational preparation ("SVP") level of 2. (Tr. 480).  The VE testified that there are approximately 800 such jobs locally, 3,500 statewide, 130,000 nationwide. (Tr. 480).  The VE also stated that the Plaintiff could perform the job of a gate guard, DOT no. 372.667-030, which is a light level job with an SVP of 3.

(Tr. 480). The VE testified that there are 1,700 such jobs locally, 7,000-9,000 statewide, and 130,000 nationwide. (Tr. 480). Finally, the VE stated that the Plaintiff could perform the job of a case aide, DOT no.195.367-010, which is a light level job with an SVP of 3. (Tr. 480). The VE testified that there were 600 such jobs locally, 3,000 statewide, and 70,000 nationwide. (Tr. 480). The local area contemplated by the VE was the Fort Myers–Cape Coral area in Florida. (Tr. 481).

The Plaintiff's attorney then examined the VE. (Tr. 481). The attorney asked the VE whether he would change his answer if the Plaintiff needed a cane for sustained ambulation without pain, could not use the free hand to carry small objects, could never reach with the left hand, but could occasionally finger, handle, feel, push, pull, and use left foot. (Tr. 481). The ALJ then added that the Plaintiff could not carry anything because he could not do any fine manipulation with his left hand and needed to use a cane. (Tr. 481). The VE responded that the recommended jobs will not require the Plaintiff to carry. (Tr. 481). As an example, the VE stated that the Plaintiff could "pretty much" do surveillance system monitor and case aide jobs on a computer. (Tr. 481-82).

The Plaintiff's attorney then asked the VE if both of those jobs require bilateral manual dexterity. (Tr. 482). The VE responded that these jobs require occasional reaching, handling, and fingering. (Tr. 482). The VE then admitted that these jobs are bimanual, but opined that the Plaintiff was still capable of performing them, aside from what the DOT says. (Tr. 482).

The Plaintiff's attorney then stated that the VE's testimony would be inconsistent with the DOT, Social Security Ruling 83-12, and DI25020 in the Program Operations Manual System of the Social Security Administration. (Tr. 482). The attorney further stated that, essentially, according to Dr. Johnson, the Plaintiff lost the "use of an arm which would be greatly impinge on unskilled, sedentary work and generally reduce the occupational base." (Tr. 482). In response, the ALJ stated that it was Dr. Johnson's

residual functional capacity ("RFC") assessment, and not the ALJ's RFC, and the ALJ was aware of that difference. (Tr. 482-83). The ALJ then concluded the hearing. (Tr. 483).

## III. Specific Issues and Conclusions of Law

The Plaintiff raises the following issues on appeal: (1) the ALJ erred by failing to consider the Plaintiff's problems with lower left extremity and by failing to consider the objective evidence of the Plaintiff's back pain, (2) the ALJ erred by basing his assessment of the Plaintiff's RFC on the Plaintiff's part-time work, (3) the ALJ erred by posing a defective hypothetical question to the VE because he did not specify the very high frequency with which the Plaintiff needed to alternate his sitting and standing positions, (4) the ALJ erred by failing to resolve the conflict between the sit/stand option requirement and the DOT as mandated by *Leonard* and S.S.R. 00-4P, and (5) the ALJ erred by failing to discuss per S.S.R. 82-41 the transferability of the Plaintiff's skills to the three jobs suggested by the VE.

### A.   The ALJ Did Not Err By Failing to Consider the Plaintiff's Problems with Lower Left Extremity and the Objective Evidence of the Plaintiff's Lower Back

The Plaintiff argues that the ALJ completely overlooked Dr. Johnson's opinion that the Plaintiff's left side was weak, that his motor strength in the lower left extremity was 4/5, that he could not do heel to shin testing while using his left side, and that he had a hard time walking without a cane due to a stroke. (Doc. 18 p. 15). Also, the Plaintiff argues that the ALJ failed to consider objective evidence of the Plaintiff's back problems. (Doc. 18 p. 15-16). The Defendant counters that the ALJ did consider all of the Plaintiff's impairments in assessing his RFC. (Doc. 19 p. 4). Specifically, the Defendant argues that the ALJ accounted for the Plaintiff's leg weakness by limiting the Plaintiff's RFC to light to sedentary work with a sit/stand option which the Plaintiff could exercise at will; no climbing ropes, ladders, or scaffolds; only occasionally climbing stairs or stooping; no squatting, kneeling, or crawling; and no exposure to

unprotected heights or hazardous machinery. (Doc. 19 p. 4-5) (citing Tr. 16-17).  The Defendant also argues that the ALJ did consider evidence of the Plaintiff's back problems, but found that the Plaintiff was capable of work activity within the range identified in the ALJ's RFC. (Doc. 19 p. 6).

A claimant's RFC is the work [the claimant] is still able to perform despite the limitations caused by his . . . impairments.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir.2004).  The ALJ must consider all the relevant evidence in making an RFC assessment. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  In addition, the ALJ must consider the combined effect of all impairments and "make specific and well articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

In this case, contrary to the Plaintiff's claim, the ALJ did not overlook evidence of the Plaintiff's lower left leg weakness.  In his decision, the ALJ noted evidence of moderate crepitus in the Plaintiff's left knee, Dr. Johnson's observation that the Plaintiff could only walk about two blocks and stand for only five minutes, and that the Plaintiff had an antalgic gait with left-sided limp (Tr. 16).  The ALJ considered this medical information when he determined that the Plaintiff could work a limited range of sedentary to light work, must have a sit/stand option exercisable at will, can only occasionally stoop and climb stairs, and cannot climb ropes/ladders/scaffolds, squat, kneel, or crawl (Tr. 16).  For these reasons, the Court does not find that ALJ erred by failing to consider evidence of the Plaintiff's lower left weakness in assessing his RFC.

Additionally, the Court does not find that the ALJ erred by failing to consider the objective evidence of the Plaintiff's back problems.  In the Eleventh Circuit, when a claimant alleges disability based on pain or other subjective symptoms, "[t]he pain standard requires: (1) evidence of an underlying medical

-14-

condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If a claimant's subjective testimony of pain is supported by medical evidence that satisfies the pain standard, the claimant's testimony is itself sufficient to support a finding of disability. *Holt* at 1223. However, an ALJ may choose not to credit such testimony. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). If the ALJ decides not to credit the testimony of the claimant about his subjective pain, the ALJ must "articulate explicit and adequate reasons for doing so." *Id.* at 1561-62. If the ALJ fails to do so, then, as a matter of law, that testimony is to be accepted as true. *Id.* at 1562.

In this case, the ALJ determined that the Plaintiff's subjective testimony of disabling back pain was not supported by medical evidence that satisfied the pain standard. (Tr. 18). The ALJ noted that confirmation of the Plaintiff's back pain has been frustrated by the Plaintiff's apparent issues with alcohol abuse. (Tr. 18). The ALJ found that the Plaintiff's work activity, although part-time, further belied disabling problems. (Tr. 18). Most importantly, the ALJ noted that there was no "real independent, objective confirmation" of the Plaintiff's back pain. (Tr. 18). The Plaintiff contends that there was and that the ALJ erred by failing to consider the medical evidence of the Plaintiff's chiropractor Dr. Widom. (Doc. 18 p. 15). A chiropractor, however, is not an acceptable medical source whose opinion is entitled to any special weight or deference and, thus, his opinion cannot establish the existence of an impairment. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004); 20 C.F.R. §§ 404.1513, 416.913. Nevertheless, the ALJ considered the medical evidence of the Plaintiff's chiropractor, noting that he told the Plaintiff he could return to work without restrictions upon the completion of his

-15-

treatment. (Tr. 15-16).   The Plaintiff also argues that the ALJ did not consider Dr. Johnson's medical finding of the Plaintiff's range of motion of the lumbar spine. (Doc. 18 p. 15).   However, the ALJ adopted the medical evidence of Dr. Johnson "more or less in entirety" and this acceptance was reflected in the ALJ's RFC assessment. (Tr. 18).   The Plaintiff has failed to establish that his back pain impairs him more than that found in the ALJ's RFC and, therefore, the ALJ did not err by failing to consider the objective evidence of the Plaintiff's back problems.

### B. The ALJ Did Not Err by Basing His Assessment of the Plaintiff's RFC On the Plaintiff's Part-time Work

The Plaintiff argues that an ALJ cannot consider a plaintiff's part-time work in adjudicating a disability claim unless the work constitutes substantial gainful activity. (Doc. 18 p. 16).   The Plaintiff contends that the ALJ erred by considering the Plaintiff's part-time work, which was previously found not to be SGA, in determining the Plaintiff's RFC. (Doc. 18 p. 16).   The Defendant argues that the ALJ properly noted that the Plaintiff's part-time work activity undermined the Plaintiff's allegations of disabling pain. (Doc. 19 p. 9).

The Code of Federal Regulations provides that even if the work a claimant has performed since his alleged onset of disability does not rise to the level of substantial gainful activity, it may show that the claimant is able to do more work than he actually did. 20 C.F.R. §§ 404.1571, 416.971.   Even part-time work can lead to a finding of not disabled if it constitutes a substantial gainful activity. *Kelley v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999).

In this case, the Plaintiff worked part-time for News America putting newspaper advertisements on shopping carts. (Tr. 464, 477-78).   In determining the Plaintiff's RFC, the ALJ considered this part-time work and concluded that the "claimant's work activity, albeit part-time also belies disabling problems."

(Tr. 18).  Contrary to the Plaintiff's argument, there is no inconsistency where, as here, an ALJ considers a claimant's part-time work, which was previously found not to be SGA,  in determining a claimant's RFC. 20 C.F.R. §§ 404.1571, 416.971; *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (where claimant's work, along with other evidence, was considered substantial evidence to support the ALJ's decision of not disabled).  For these reasons, the ALJ did not err by considering the Plaintiff's part-time work in determining the Plaintiff's RFC.

### C.  The ALJ Did Not Err by Posing a Defective Hypothetical Question to the VE

The Plaintiff argues that the ALJ posed a defective hypothetical question to the VE because he failed to sufficiently specify the frequency with which the Plaintiff needed to alternate his sitting/standing position pursuant to S.S.R. 96-9p. (Doc. 18 p. 18).  According to the Plaintiff, if an ALJ's hypothetical question does not contain all of the Plaintiff's impairments, then the testimony of the VE cannot constitute substantial evidence. (Doc. 18 p.17) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). The Defendant argues that the ALJ's hypothetical question was not defective because it conveyed that the Plaintiff must be able to sit or stand as frequently as needed. (Doc. 19 p. 11).

Once a Plaintiff proves that he can no longer perform his past relevant work due to disability, the burden shifts to the ALJ to prove the existence of other jobs in the national economy that the Plaintiff can perform despite his impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  Where a Plaintiff primarily suffers from an exertional impairment, without significant non-exertional factors, an ALJ may meet this burden through a straightforward application of the Medical-Vocation Guidelines (the "grids"). *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  However, exclusive reliance upon the grids is inappropriate when the Plaintiff cannot perform a full range of work at a given level of exertion. *Id.*  In such a case, an ALJ may

rely on the testimony of a VE to prove that the Plaintiff can perform other jobs despite his impairments. *Id.*  For the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which includes all of the Plaintiff's impairments. *Wilson*, 284 F.3d at 1227.

In this case, the ALJ found that the Plaintiff could no longer perform any past relevant work pursuant to 20 C.F.R. § 404.1565 and 20 C.F.R. § 416.965. (Tr. 18).  Thus, the burden shifted to the ALJ to prove the existence of jobs in the national economy that the Plaintiff could perform despite his impairments.  To determine the extent that the Plaintiff's additional limitations prevented him from performing an unlimited range of sedentary to light work, the ALJ posed a hypothetical question to the VE to determine whether  jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. (Tr. 19).  After describing the Plaintiff's medical background, the ALJ specifically asked,

> If you assume–he's right-handed.  If you assume with his right hand he can lift 20 pounds, with his left hand he can only lift 5 pounds, **he needs a sit/stand option at will to be able to work, so he can sit or stand, whatever he needs to do.**  He can occasionally stoop, he cannot squat, he cannot kneel, he cannot crawl, he can occasionally climb stairs and he says that he has to have a rail, but they all are supposed to have railings, but no ropes, ladders or scaffolds.  He can't reach with his left, and he's not able to do fine manipulation with his left.  He should not be exposed to unprotected heights or hazardous machinery . . . [i]s there any work out there [that the Plaintiff can perform]?

(Tr. 480) (emphasis added).  The VE responded "Yes, sir," and then explained that the Plaintiff could work as a surveillance system monitor, gate guard, and as a case aid. (Tr. 480).

Contrary to the Plaintiff's argument, the ALJ was not required by S.S.R. 96-9p to specify the exact frequency which the Plaintiff needed to sit or stand.  S.S.R. 96-9p applies only in situations where an individual's RFC is limited to sedentary work. *See Cooper v. Astrue*, No. 4:08-cv-00476, 2009 WL 3242029, at *12 (N.D. Fla. October 6, 2009).  Here, the ALJ determined that the Plaintiff had the RFC to

perform limited sedentary to light work. (Tr. 16).  As the Plaintiff's RFC was not limited to only sedentary

work, S.S.R. 96-9p's requirement to specify the frequency the Plaintiff must alternate between sitting and

standing does not apply.  As it was posed, the ALJ's question adequately conveyed to the VE that the

Plaintiff must be able to alternate positions as frequently as necessary. *See Williams v. Barnhart*, 140 F.

App'x. 932, 937 (11th Cir. 2005) (where Eleventh Circuit held that ALJ's hypothetical question was not

incomplete because it did not specify the frequency the claimant needed to sit or stand).  For these reasons,

the ALJ did not err by posing an incomplete hypothetical question to the VE.

### D.  The ALJ Did Not Err by Failing to Resolve an Apparent Conflict Between the VE's Testimony and the DOT

According to the Plaintiff, a VE's testimony conflicts with the DOT when that testimony claims

an individual with a sit/stand option can perform light or sedentary work.  (Doc. 18 p. 19) (citing *Strain

v. Astrue*, No. 2:09-CV-320-FtM-UA-DNF, 2009 WL 2207509, at *26-27 (M.D. Fla. July 14, 2009)).  As

the DOT classifies the jobs identified by the VE as sedentary or light, and the Plaintiff's RFC contains a

sit/stand option exercisable at will, the Plaintiff argues that there is a conflict between the testimony of the

VE and the DOT.  The Defendant argues that the ALJ resolved any conflict between the VE's testimony

and the DOT by considering, addressing, and relying on the VE's credentials and testimony. (Doc. 19 p.

12).

S.S.R. 00-4p provides that,

Occupational evidence provided by a VE . . . generally should be consistent with the occupational
information supplied by the DOT.  When there is an apparent unresolved conflict between the VE
. . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict
before relying on the VE . . . evidence to support a determination or decision about whether the
claimant is disabled.  At the hearing level, as part of the adjudicator's duty to fully develop the
record, the adjudicator will inquire, on the record as to whether or not there is such consistency.

Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict.  The

> adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

Prior to the promulgation of S.S.R. 00-4p, it was the established rule of the Eleventh Circuit that a VE's testimony "trumps" the DOT where that testimony is in conflict with the occupational information supplied in the DOT. *Jones v. Apfel*, 190 F.3d 1224, 1228-29 (11th Cir. 1999). In *Leonard v. Astrue*, 487 F.Supp.2d 1333,1339 (M.D. Fla. 2007), the court concluded that S.S.R. 00-4p altered the rule of *Jones* that a VE's testimony automatically "trumps" the DOT. The *Leonard* court held that, "pursuant to S.S.R. 00-4p, when a conflict exists between a VE's testimony and the DOT, an ALJ must elicit a reasonable explanation for the conflict and his or her failure to do so can constitute reversible error." *Id.*

In this case, the ALJ specified in the hypothetical question posed to the VE that the Plaintiff needed a sit/stand option exercisable at will. (Tr. 480). Keeping in mind this functional limitation, the VE opined that the Plaintiff could perform the work of a surveillance system monitor, case aide, and gate guard. (Tr. 480). Contrary to the Plaintiff's claim, there is no conflict between a VE's testimony and the DOT where, as here, the VE's testimony that an individual with a sit/stand option can work light or sedentary work was given in response to a hypothetical question that specified that the individual must be able to sit or stand at will. In *Strain v. Astrue*, upon which the Plaintiff's argument relies, the ALJ erred by failing to specify that the plaintiff must be able to alternate positions "at her option" or "at will." Due to the defective hypothetical question, the VE in *Strain* offered jobs that the plaintiff could work without consideration of the plaintiff's entire RFC. This is unlike the instant case in which the VE considered the Plaintiff's entire RFC, including the at will sit/stand option, before determining the jobs the Plaintiff could work..

Furthermore, contrary to the Plaintiff's claim, the alleged conflict between the VE's testimony and the DOT regarding sit/stand options was not apparent during the hearing. During the hearing, the

Plaintiff's attorney argued that the VE's testimony conflicted with the DOT in regards to the jobs the Plaintiff could work due to the limitations of his left hand. (Tr. 482). The ALJ addressed this apparent conflict, asking the VE, "In your experience, Doctor, would [the Plaintiff] be able to do those jobs . . . aside from whatever the DOT says?" Relying upon his expertise, the VE responded that the Plaintiff could still work the jobs that the VE identified. In this way, the ALJ addressed and resolved the only apparent conflict between the VE's testimony and the DOT pursuant to S.S.R. 00-4p. The Plaintiff did not raise any objection to an apparent conflict between the VE's testimony and the DOT regarding at will sit/stand options. The ALJ cannot be held to have erred when the Plaintiff did not raise the conflict at the hearing. *Sollars-D'Annunzio*, 2009 WL 302170, at *10 (S.S.R. 00-4p does not, "by its own wording, mandate that an ALJ has a duty independently to investigate whether there is a conflict between the VE's testimony and the DOT."). For these reasons, the ALJ did not err by failing to resolve an apparent conflict between the VE's testimony and the DOT.

### E.  The ALJ Did Not Err By Failing to Discuss the Transferability of the Claimant's Skills to the Three Jobs Suggested By the VE

The Plaintiff argues that the ALJ erred by failing to discuss the transferability of the Plaintiff's skills to gate guard and case aide, which are listed as semi-skilled jobs in the DOT, pursuant to S.S.R. 82-41. (Doc. 18 p. 20). Further, the Plaintiff argues that the ALJ should have discussed the transferability of the Plaintiff's skills to surveillance system monitor occupation given the evidence that it no longer exists in the national economy on an unskilled level. (Doc. 18 p. 20). The Defendant counters that an ALJ is only required to make a specific finding as to transferability of skills when dealing with individuals over age forty-five who are restricted to sedentary work, which is not the case here. (Doc. 19 p. 13). Further, the Defendant argues that the ALJ did not err by not relying on the VE's testimony regarding the availability

of the surveillance system monitor occupation because the VE's testimony was based on his own expertise regarding work in the region and nation. (Doc. 19 p. 14).  Additionally, even if the VE's testimony is outdated, the VE still  identified 170,000 other jobs that the Plaintiff could perform in the national economy. (Doc. 19 p. 15).

In this case, the ALJ ruled that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. 18).  Contrary to the Plaintiff's argument, the ALJ was not required to discuss the transferability of the Plaintiff's skills to gate guard and case aide pursuant to S.S.R. 82-41.  An ALJ is only required to make specific findings as to transferability of skills when dealing with individuals over age forty-five who are restricted to sedentary work. 20 C.F.R. pt. 404, subpt. P app. 2 § 201.00(h)(1).  Also, during the second hearing, the ALJ specifically asked the VE to identify jobs that a person of the Plaintiff's RFC, age, education, and previous work experience could perform. (Tr. 479).  The VE responded by discussing the specific occupations that the ALJ included in his decision. (Tr. 480-82).  In determining the jobs the Plaintiff could perform, the VE implicitly evaluated the Plaintiff's particular skills.  Thus, the ALJ met any requirements to base his finding as to other work on evaluation of transferable skills.

The Plaintiff's argument concerning the obsolescence of the DOT description of surveillance system monitor also fails.  The Plaintiff argues that the ALJ erred in allowing the VE to base his testimony on the DOT, as the DOT's description of the surveillance system monitor is obsolete and inaccurate. (Doc. 18 p. 23).  According to the Plaintiff, if the VE's testimony was to constitute substantial evidence, the VE should have relied on more recent occupational information such as that found in the Occupational Information Network ("O*Net"). (Doc. 18 p. 24).  However, O*NET is not listed as an acceptable

publication in the 2011 Code of Federal Regulations, while the DOT is still listed as an acceptable publication in determining whether certain jobs exist in the national economy. 20 C.F.R. § 404.1566(d)(1). In this case, the ALJ relied upon two sources acceptable to the federal regulations in determining whether certain jobs exist in the national economy, the testimony evidence of the VE and the DOT.  The Plaintiff has failed to provide any legal authority from the Eleventh Circuit that would convince the Court to adopt an unlisted source.  Additionally, even assuming, *arguendo*, that the VE committed some error in identifying 130,000 surveillance system jobs nationally, the Court notes that the VE also identified 170,000 other jobs nationally that the Plaintiff could perform.  Thus, the VE's testimony established the existence of a significant number of jobs that the Plaintiff could perform, even without the surveillance system monitor job.  For these reasons, the Court does not find that the ALJ erred by accepting the testimony of a VE relying upon the DOT.

## IV. Conclusions

Accordingly, the ALJ's decision is consistent with the requirements of the law and supported by substantial evidence. Therefore, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk of Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

DONE and ORDERED in Chambers in Ft. Myers, Florida this 9th day of September, 2011.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record

-23-